UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

**MORRIS S. BAUER**
**NORRIS, MCLAUGHLIN & MARCUS, PA**
Co-Counsel for the Plaintiffs/Debtors/Debtors-in-
Possession
721 Route 202-206, Suite 200
PO Box 5933
Bridgewater, NJ 08807-5933
(908) 722-0700

**BERGER & BORNSTEIN, LLC**
Co-Counsel for the Plaintiffs/ Debtors/Debtors-in-
Possession
237 South Street
P.O. Box 2049
Morristown, NJ 07960-7342
(973) 993-8600

| | |
|---|---|
| In Re:<br><br>S B BUILDING ASSOCIATES LIMITED PARTNERSHIP,<br>SB MILLTOWN INDUSTRIAL REALTY HOLDINGS, LLC, and<br>ALSOL CORPORATION,<br><br>       Debtors. | Case Nos.:  13-12682 (MBK)<br>       13-12685 (MBK)<br>       13-12689 (MBK)<br><br>Judge:   Hon. Michael B. Kaplan<br><br>Chapter:  11 |
| S B BUILDING ASSOCIATES LIMITED PARTNERSHIP,<br>SB MILLTOWN INDUSTRIAL REALTY HOLDINGS, LLC, and<br>ALSOL CORPORATION,<br><br>       Plaintiffs,<br><br>v.<br><br>CHERRY TREE PROPERTY, L.L.C., SASS MUNI IV, L.L.C., SASS MUNI V, L.L.C., and SASS MUNI VI, L.L.C.,<br><br>       Defendants. | Adv. Pro. No.: 14-01582 (MBK) |

**FIRST AMENDED VERIFIED COMPLAINT TO DISALLOW OR REDUCE CLAIMS
OF DEFENDANTS AND TO ADJUDICATE AFFIRMATIVE CLAIMS OF THE
DEBTORS AGAINST DEFENDANTS**

S B Building Associates Limited Partnership ("SB Building"), SB Milltown Industrial

Realty Holdings LLC ("SB Milltown"), and Alsol Corporation ("Alsol" and collectively with SB

Building and SB Milltown the "Debtors" or "Plaintiffs"), by and through their counsel, Norris

McLaughlin & Marcus, P.A. and Berger & Bornstein, LLC, as and for their Verified Complaint

against defendants Cherry Tree Property L.L.C. ("Cherry Tree"), Sass Muni IV, L.L.C, Sass

Muni V, L.L.C. and Sass Muni VI, L.L.C., which are hereinafter referred to individually and

collectively as "Sass," and along with Cherry Tree collectively the "Defendants"), respectfully

alleges as follows:

**NATURE OF ACTION**

The Debtors seek to disallow or, alternatively, reduce, pursuant to proceedings under 11

U.S.C. § 502, the claims based on certain tax sale certificates, and subsequent taxes, charges,

penalties, interest and fees being claimed in connection therewith, asserted by Defendants against

each of the Debtors, and to adjudicate certain affirmative claims of the Debtors against the

Defendants as set forth in causes of action set forth below, and enter judgments thereon in favor

of the Debtors.

Specifically, the Debtors seek the disallowance of all claims because Defendants

knowingly charged or exacted sums for redemption in excess of that permitted under the New

Jersey's "Tax Sale Law," N.J.S.A. § 54:5-1, *et. seq.,* ("Tax Sale Law"), which, pursuant N.J.S.A.

§ 54:5-63.1, forfeits the tax sale certificates on which those claims are based to the Debtors.  If

the remedy of forfeiture is not available, then Debtors seek to have the claims of the Defendants

reduced and adjusted to excise any excessive, illegal or improper charges.   The excessive, illegal

or improper charges and sums include or otherwise arise from 1) the acquisition of tax sale certificates through the illegal rigging of the bidding process at the auctions at which the tax sale certificates were sold, so as to eliminate competitive bidding in derogation of New Jersey's Tax Sale Law and of the state and federal statutes, and thereby allow Defendants to purchase the certificates at the highest interest rate permitted, i.e., 18%, rather than a lower rate which would have resulted if Defendants and their co-conspirators did not illegally eliminate competitive bidding; (ii) charging the Debtors on subsequent taxes paid by Defendants 18% interest on the total delinquent amount each year instead of the statutory 8% interest on the first $1,500 and 18% interest for amounts in excess of $1,500 for each year as required under N.J.S.A. § 54:4-67; (iii) charging the Debtors interest on the year end penalty contrary to N.J.S.A. § 54:4-67 and the Milltown Township ordinances; (iv) charging the Debtors compounded interest on each year's interest on taxes and the year end penalty contrary to N.J.S.A. § 54:4-67; (v) purchasing subsequent tax certificates on Debtors' properties, rather than paying the subsequent taxes, so as to inflate the interest rate charged as a result of the 6% redemption penalty set forth in N.J.S.A. § 54:5-61 contrary to statutory intent and eliminate charging interest at 8% on the first $1,500 of taxes owed each year; (vi) requesting interest on the amount demanded in their proofs of claim thereby compounding interest; and (vii) charging interest on the redemption penalty.

Debtors also seek to adjudicate certain affirmative claims of the Debtors against the Defendants for violations of federal and state Racketeer Influenced and Corrupt Organization ("RICO") statutes (*N.J.S.A.* 2C:41–1 to –6.2.; 18 *U.S.C.A.* §1961 to §1968), federal and state anti-trust statutes (*N.J.S.A.* 56:9-1, *et seq.*, 15 *U.S.C.A.* § 1) and New Jersey's Consumer Fraud Act ( *N.J.S.A.* 56:8-1. *et seq.*), based upon the Defendants' acquisition of the tax sale certificates underlying their claims against the Debtors through their state wide conspiracy with other tax

3

sale certificate investors with respect to "bid rigging" the auction process through which those tax sale certificates were acquired, to the detriment of Debtors, and to have judgments for damages, including, but not limited to, statutory treble damages and legal fees and costs, entered against Defendants in favor of the Debtors, which also reduce or eliminate the amount of Defendants' claims against Debtors.

## JURISDICTION AND VENUE

1.      This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001 and Sections 502 and 506 of title 11 of the United States Code (the "Bankruptcy Code").

2.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

3.      This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. §§ 157(b)(2) (A), (B) and (K).

4.      Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      In the event that any cause of action contained in this adversary proceeding is found to be "non-core", the Debtors consent to the entry of final orders and judgments by this Court, pursuant to Federal Rule of Bankruptcy Procedure 7008.

## THE PARTIES

6.      SB Building is a New Jersey limited partnership and is a Debtor in the above captioned Chapter 11 bankruptcy case (the "Chapter 11 Case") having filed a voluntary chapter 11 petition on February 11, 2013 (the "Petition Date"). SB Building maintains an office address at 237 South Street, Morristown, New Jersey 07960.

7.      SB Milltown is a New Jersey limited partnership and is a Debtor in the Chapter 11 Case having also filed a voluntary chapter 11 petition on the Petition Date.  SB Milltown maintains an office address at 237 South Street, Morristown, New Jersey 07960.

8.      Alsol is a New Jersey corporation and is a Debtor in the Chapter 11 Case having also filed a voluntary chapter 11 petition on the Petition Date.  Alsol maintains an office address at 237 South Street, Morristown, New Jersey 07960.

9.      Upon information and belief, the Defendant Cherry Tree is a business with an office address of 1185 Avenue of the Americas, 18th Floor, New York, New York 10036.

10.     Upon information and belief, the Defendant Sass Muni IV, L.L.C. is a business with an office address of 1185 Avenue of Americas, 18th Floor, New York, New York 10036.

11.      Upon information and belief, the Defendant Sass Muni V, L.L.C. is a business with an office address of 1185 Avenue of Americas, 18th Floor, New York, New York 10036.

12.     Upon information and belief, the Defendant Sass Muni VI, L.L.C. is a business with an office address of 1185 Avenue of Americas, 18th Floor, New York, New York 10036.

## PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

### The Debtors Properties

13.     SB Building is the owner of Block 58, Lot 1.03, Block 59.01, Lot 10 and Block 59.01, Lot 5.01 on the tax maps for the Borough of Milltown ("Borough of Milltown" or "Milltown"), Middlesex County, New Jersey.  These parcels consist of buildings 13 (36,922 sf), 15 (aggregating 56,832 sf), 18-18(b) (aggregating 39,527 sf), 20 (29,776 sf), 22 (18,096 sf), a house and some vacant land.

14.     SB Milltown is the owner of a parcel identified as Block 58, Lot 1.02 on the tax maps for the Borough of Milltown, Middlesex County, New Jersey.  On these parcels are located

buildings 6-8 (aggregating 91,997 sf), 11 (5,842 sf), 12 (23,579 sf), 16 (18,509 sf), and 60 (51,666 sf).

15.     Alsol is the owner of land identified as Block 58, Lot 1.01, Block 58, Lot 1.07 and Block 60, Lot 1.01.  On these parcels are located buildings 3 (44,590 sf), 5 (9,450 sf), 9 (6,071 sf), and 10 (20,945 sf).

**The Defendants' Tax Sale Certificates and Proofs of Claim**

a.     **Cherry Tree's Claims Against S B Building**

16.     Upon information and belief, on October 26, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-005 for a sale price of $18,322.89 bearing interest at 18% relating to Block 58, Lot 1.03.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, nine tax sale certificates were sold by the Borough of Milltown that day and all were sold at an interest rate of 18%.

17.     Upon information and belief, on December 29, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-016 for a sale price of $122,361.27 bearing interest at 18% relating to Block 58, Lot 1.03. Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, thirteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

18.     Upon information and belief, on December 27, 2007, Sass, through its representative Richard Hruby, purchased from the Borough of Milltown Certificate No. 070005 for a sale price of $33,835.48 bearing interest at 18% relating to Block 58, Lot 1.03.  Despite the fact that there were many bidders at the auction which should have resulted in competitive

bidding, sixteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

19.    Upon information and belief, on December 29, 2008, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 080005 for a sale price of $34,562.79 bearing interest at 18% relating to Block 58, Lot 1.03.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, fifteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

20.    Upon information and belief, on December 30, 2009, Sass, through its representative Anthony Potenza, purchased from the Borough of Milltown Certificate No. 09-00006 for a sale price of $37,367.41 bearing interest at 18% relating to Block 58, Lot 1.03. Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, eighteen tax sale certificates were sold by the Borough of Milltown that day, twelve of which were sold at an interest rate of 18%.

21.    On or about October 16, 2012, Sass filed a Complaint for Foreclosure of Tax Sale Certificate with the Superior Court of New Jersey, Chancery Division, Middlesex County, Dkt. No. F-23793-12 to foreclose on Block 58, Lot 1.03.

22.    Upon information and belief, on December 30, 2002, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 02-103 for a sale price of $2,753.35 bearing interest at 18% relating to Block 59.01, Lot 10.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, five tax sale certificates were sold by the Borough of Milltown that day, all of which were sold at an interest rate of 18%.

23.    Upon information and belief, on December 30, 2003, Sass, through its representative Tom Neroda, purchased from the Borough of Milltown Certificate No. 030008 for a sale price of $1,949.13 bearing interest at 18% relating to Block 59.01, Lot 10.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, nine tax sale certificates were sold by the Borough of Milltown that day, five of which were sold at an interest rate of 18%.

24.    Upon information and belief, on December 29, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-019 for a sale price of $4,073.24 bearing interest at 18% relating to Block 59.01, Lot 10.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, thirteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

25.    Upon information and belief, on December 29, 2008, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 080008 for a sale price of $1,165.51 bearing interest at 18% relating to Block 59.01, Lot 10.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, fifteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

26.    On or about October 16, 2012, Sass filed a Complaint for Foreclosure of Tax Sale Certificate with the Superior Court of New Jersey, Chancery Division, Middlesex County, Dkt. No. F-23793-12 to foreclose on Block 59.01, Lot 10.

27.    Upon information and belief, Sass assigned the tax sale certificates referenced in paragraphs 16 to 20 and 22 to 25 above to Cherry Tree.

28.     On July 3, 2013, Cherry Tree filed a proof of claim against SB Building (Claim No. 5) alleging that it is owed as of the Petition Date $2,562,776.28 demanding an interest rate of 18% on the entire sum with a per diem interest accrual of $680.68 with respect to Block 58, Lot 1.03, and $67,904.49 demanding an interest rate of 18% on the entire sum with a per diem interest accrual of $15.58 with respect to Block 59.01, Lot 10, thereby compounding interest.

**b.     Cherry Tree's Claims Against SB Milltown**

29.     Upon information and belief, on October 26, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-004 for a sale price of $15,515.16 bearing interest at 18% relating to Block 58, Lot 1.02.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, nine tax sale certificates were sold by the Borough of Milltown that day and all were sold at an interest rate of 18%.

30.     Upon information and belief, on December 29, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-015 for a sale price of $14,758.15 bearing interest at 18% relating to Block 58, Lot 1.02.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, thirteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

31.     Upon information and belief, on December 27, 2007, Sass, through its representative Richard Hruby, purchased from the Borough of Milltown Certificate No. 070004 for a sale price of $17,275.12 bearing interest at 18% relating to Block 58, Lot 1.02.  Despite the fact that there were many bidders at the auction which should have resulted in competitive

bidding, sixteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

32.     Upon information and belief, on December 29, 2008, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 080004 for a sale price of $17,645.13 bearing interest at 18% relating to Block 58, Lot 1.02.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, fifteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

33.     On or about April 19, 2011, Sass filed a Complaint for Foreclosure of Tax Sale Certificate with the Superior Court of New Jersey, Chancery Division, Middlesex County, Dkt. No. F-002686-11 to foreclose on Block 58, Lot 1.02.

34.     Upon information and belief, Sass assigned the tax sale certificates referenced in paragraphs 29 to 32 above to Cherry Tree.

35.     On July 3, 2013, Cherry Tree filed a proof of claim against SB Milltown (Claim No. 9) alleging that it is owed as of the Petition Date $1,092,177.33 demanding interest on the entire sum at 18% per annum with a per diem interest accrual of $302.46, thereby compounding interest.

c.     **Cherry Tree's Claims Against Alsol**

36.     Upon information and belief, on December 30, 2002, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 02-102 for a sale price of $1,087.80 bearing interest at 18% relating to Block 58, Lot 1.07.   Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, five tax

sale certificates were sold by the Borough of Milltown that day, all of which were sold at an interest rate of 18%.

37.    Upon information and belief, on December 30, 2003, Sass, through its representative Tom Neroda, purchased from the Borough of Milltown Certificate No. 030007 for a sale price of $569.39 bearing interest at 18% relating to Block 58, Lot 1.07.    Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, nine tax sale certificates were sold by the Borough of Milltown that day, five of which were sold at an interest rate of 18%.

38.    Upon information and belief, on December 29, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-017 for a sale price of $1,161.09 bearing interest at 18% relating to Block 58, Lot 1.07.    Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, thirteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

39.    Upon information and belief, on December 29, 2008, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 080006 for a sale price of $353.79 bearing interest at 18% relating to Block 58, Lot 1.07.    Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, fifteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

40.    On or about October 16, 2012, Sass filed a Complaint for Foreclosure of Tax Sale Certificate with the Superior Court of New Jersey, Chancery Division, Middlesex County, Dkt. No. F-023735-12 to foreclose on Block 58, Lot 1.07.

41.     Upon information and belief, on October 23, 2002, Sass, through its representative Martin Medvin, purchased from the Borough of Milltown Certificate No. 02-003 for a sale price of $60.03 bearing interest at 18% relating to Block 58, Lot 1.01.

42.     Upon information and belief, on December 30, 2002, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 02-101 for a sale price of $50,833.93 bearing interest at 18% relating to Block 58, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, five tax sale certificates were sold by the Borough of Milltown that day, all of which were sold at an interest rate of 18%.

43.     Upon information and belief, on December 30, 2003, Sass, through its representative Tom Neroda, purchased from the Borough of Milltown Certificate No. 030006 for a sale price of $25,888.78 bearing interest at 18% relating to Block 58, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, five tax sale certificates were sold by the Borough of Milltown that day, all of which were sold at an interest rate of 18%.

44.     Upon information and belief, on October 26, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-003 for a sale price of $365.99 bearing interest at 18% relating to Block 58, Lot 1.01.   Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, nine tax sale certificates were sold by the Borough of Milltown that day and all were sold at an interest rate of 18%.

45.     Upon information and belief, on December 29, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-014

for a sale price of $54,330.13 bearing interest at 18% relating to Block 58, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, thirteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

46.    Upon information and belief, on December 27, 2007, Sass, through its representative Richard Hruby, purchased from the Borough of Milltown Certificate No. 070003 for a sale price of $15,073.76 bearing interest at 18% relating to Block 58, Lot 1.01.    Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, sixteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

47.    Upon information and belief, on December 29, 2008, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 080003 for a sale price of $15,396.29 bearing interest at 18% relating to Block 58, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, fifteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

48.    Upon information and belief, on December 30, 2009, Sass, through its representative Anthony Potenza, purchased from the Borough of Milltown Certificate No. 09-00004 for a sale price of $16,639.98 bearing interest at 18% relating to Block 58, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding,  eighteen tax sale certificates were sold by the Borough of Milltown that day, twelve of which were sold at an interest rate of 18%.

49.     On or about October 16, 2012, Sass filed a Complaint for Foreclosure of Tax Sale Certificate with the Superior Court of New Jersey, Chancery Division, Middlesex County, Dkt. No. F-023737-12 to foreclose on Block 58, Lot 1.01.

50.     Upon information and belief, on December 30, 2002, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 02-104 for a sale price of $713.01 bearing interest at 18% relating to Block 60, Lot 1.01.   Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding,  five tax sale certificates were sold by the Borough of Milltown that day, all of which were sold at an interest rate of 18%.

51.     Upon information and belief, on December 30, 2003, Sass, through its representative Tom Neroda, purchased from the Borough of Milltown Certificate No. 030009 for a sale price of $392.93 bearing interest at 18% relating to Block 60, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, nine tax sale certificates were sold by the Borough of Milltown that day, five of which were sold at an interest rate of 18%.

52.     Upon information and belief, on December 29, 2004, Sass, through its representative John de Guzman, purchased from the Borough of Milltown Certificate No. 04-020 for a sale price of $782.53 bearing interest at 18% relating to Block 60, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, thirteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

53.     Upon information and belief, on December 29, 2008, Sass, through its representative, purchased from the Borough of Milltown Certificate No. 080009 for a sale price

of $270.94 bearing interest at 18% relating to Block 60, Lot 1.01.  Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, fifteen tax sale certificates were sold by the Borough of Milltown that day, eight of which were sold at an interest rate of 18%.

54.    On or about October 16, 2012, Sass filed a Complaint for Foreclosure of Tax Sale Certificate with the Superior Court of New Jersey, Chancery Division, Middlesex County, Dkt. No. F-023740-12 to foreclose on Block 60, Lot 1.01.

55.    Upon information and belief, Sass assigned the tax sale certificates referenced in paragraphs 36 to 39, 31 to 48 and 50 to 53 above to Cherry Tree.

56.    On July 3, 2013, Cherry Tree filed a proof of claim against Alsol (Claim No. 8) alleging that it is owed as of the Petition Date $1,214,963.52 demanding an interest rate of 18% per annum on the entire sum with a per diem interest accrual of $299.79 with respect to Block 58, Lot 1.01, effectively compounding interest, $19,983.19 demanding an interest rate of 18% per annum on the entire sum with a per diem interest accrual of $4.53, effectively compounding interest, and with respect to Block 58, Lot 1.07, $14,733.32 demanding an interest rate of 18% per annum with a per diem interest accrual of $3.57 with respect to Block 60, Lot 1.01, effectively compounding interest.

d.    **Sass Claims Against S B Building**

57.    Upon information and belief, on December 30, 2009, Sass, through its representative Anthony Potenza, purchased from the Borough of Milltown Certificate No. 09-0006 for a sale price of $37,367.41 bearing interest at 18% relating to Block 58, Lot 1.03. Despite the fact that there were many bidders at the auction which should have resulted in

15

competitive bidding, eighteen tax sale certificates were sold by the Borough of Milltown that day, twelve of which were sold at an interest rate of 18%.

58.     On July 3, 2013, Sass filed a proof of claim against SB Building  (Claim No. 4) alleging that it is owed as of the Petition Date $60,596.88 demanding interest at the rate of 18% per annum on the entire sum with a per diem interest accrual of $18.68, effectively compounding interest.

### e.     Sass Claims Against SB Milltown

59.     Upon information and belief, on December 30, 2009, Sass, through its representative Anthony Potenza, purchased from the Borough of Milltown Certificate No. 09-0005 for a sale price of $19,071.98 bearing interest at 18% relating to Block 58, Lot 1.02. Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, eighteen tax sale certificates were sold by the Borough of Milltown that day, twelve of which were sold at an interest rate of 18%.

60.     Upon information and belief, on October 27, 2011, Sass, through its representative Dan Maistrow, purchased from the Borough of Milltown Certificate No. 11-00029 for a sale price of $416.93 bearing interest at 18% relating to Block 58, Lot 1.02.

61.     On July 3, 2013, Sass filed a proof of claim against SB Milltown (Claim No. 3) alleging that it is owed as of the Petition Date $31,514.14 demanding interest at the rate of 18% per annum on the entire sum with a per diem interest accrual of $9.75, effectively compounding interest.

### f.     Sass Claims Against Alsol

62.     Upon information and belief, on December 30, 2009, Sass, through its representative Anthony Potenza, purchased from the Borough of Milltown Certificate No. 09-

16

0006 for a sale price of $16,639.98 bearing interest at 18% relating to Block 58, Lot 1.01. Despite the fact that there were many bidders at the auction which should have resulted in competitive bidding, eighteen tax sale certificates were sold by the Borough of Milltown that day, twelve of which were sold at an interest rate of 18%.

63.    On July 3, 2013, Sass filed a proof of claim against Alsol  (Claim No. 3) alleging that it is owed as of the Petition Date $27,008.09 demanding interest at the rate of 18% per annum on the entire sum with a per diem interest accrual of $8.32, effectively compounding interest.

**Tax Sale Certificates in New Jersey**

64.    N.J.S.A. § 54:5-1, *et. seq.* (the "Tax Sale Law") governs the "[c]reation, enforcement and collection of liens for unpaid [real property] taxes and other municipal liens on real property."

65.    N.J.S.A. § 54:5-6 provides that "[t]axes on lands shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien."

66.    Pursuant to N.J.S.A. §§ 54:5-25, 54:5-31, and 54:5-32, the municipality where the property with unpaid taxes and other municipal liens is situated will auction the liens on public notice of the date and time for the auction.  The sale will be made the person as will purchase the tax sale certificate at the lowest rate of interest, but in no case in excess of 18% per annum and if less than 1%, such person may offer a premium.

67.    The successful bidder acquires the lien and receives a tax sale certificate.  In addition, the successful bidder obtains certain rights including the right to pay subsequent taxes

on the subject property with an interest rate of 18% and the right to foreclose on the property more than 2 years from the purchase date.

68.     N.J.S.A. § 54:4-67 provides in pertinent part that the municipality may fix a penalty to be charged to a taxpayer with a tax delinquency existing at the end of a fiscal year in excess of $10,000, which penalty not to exceed 6% of the amount of the delinquency.  This penalty is commonly referred to as the "Year End Penalty".

69.     N.J.S.A. § 54:4-67 provides that interest shall only be applied to the outstanding delinquency, which is comprised of all taxes and municipal charges and does not include interest.

70.     The tax lien auction is designed to help the municipalities collect payment on the outstanding taxes while also helping the property owner, who is likely experiencing financial difficulty, by engendering competitive bidding through a public auction such that the bid down interest could be 0% and the property owner will experience at least one year without an accrual of interest or at least an interest rate substantially less than the 18% assessed prior to the auction of the tax sale certificate.

71.     The Defendants' participation in a state wide bid rigging conspiracy thwarted such Legislative purpose and was in derogation of the law.

**Sass/Cherry Tree Alleged Participation in an Illegal Bid Rigging Scheme with Other Parties**

72.     Beginning in or about early 2009, the Department of Justice (the "<u>DOJ</u>") commenced an investigation of an alleged conspiracy in the bidding for New Jersey tax sale certificates spanning a period of approximately 11 years from 2000 through 2011 (the "<u>DOJ Investigation</u>").

73.     The DOJ Investigation found that rather than engaging in a competitive bidding process for the tax sale certificates, certain bidders secretly agreed to rig the auctions throughout

New Jersey in order to eliminate or reduce the competitive bidding, thereby guaranteeing the interest rate would be artificially high (usually at the statutory maximum of 18%) – and thus securing excessive and illegal returns on their tax sale certificate investments. This agreement included which certificate that each bidder would bid and "win" at the auction.

74.    To date, the DOJ Investigation has resulted in 15 individuals and entities having pled guilty. An additional 6 individuals and/or entities were indicted on November 19, 2013, and face charges for participating in the collusion.

75.    In addition, a class action suit was filed in the United States District Court for the District of New Jersey, entitled In re New Jersey Tax Sales Certificates Antitrust Litig., Master Docket No. 3:12-cv-01893-MAS-TJB (the "Class Action Suit").

76.    Sass and its affiliates and employees are being investigated by the DOJ and were named defendants (the "Sass Class Defendants") in the Class Action Suit.

77.    In the matter of Phoenix Bond & Indemnity Co. v. Bridge, Case No. 05-cv-04095, U.S. District Court, Northern District of Illinois, a jury found in favor of two lien buying firms that claimed that Sass and other companies secretly and illegally worked together to buy tax liens. The damages awarded were in excess of $20 million and included compensatory damages, trebled under RICO and legal fees. Judgment for damages trebled under RICO was obtained against M.D. Sass, Sass Muni V, Sass Muni IV, and Sass employees Vinaya Jessani and Kirk Allison.

78.    Stephen E. Hruby, an officer of Sass, has pled guilty as part of the DOJ Investigation.

79.     Mr. Hruby's primary role at Sass was director of acquisitions of tax liens.  In this capacity, Mr. Hruby oversaw, supervised and directed the purchase of tax sale certificates by Sass in New Jersey.

80.     The conspiracy charge to which Mr. Hruby pled guilty was based on the fact that in his job at Sass he "oversaw the purchase of tax liens …," and, inter alia, "instructed other bidders under his supervision" to submit collusive bids.  Without such instructions, the tax sale certificates detailed herein would not have been sold at an interest rate of 18%.

81.     On April 17, 2012, Stephen Hruby pled guilty to violating the Sherman Act for his role in the conspiracy.  See United States of America v. Stephen E. Hruby, 12-CR-263 (D.N.J.)(D.M.C.).  The information accompanying his guilty plea states:

> From at least as early as December 2002 to until approximately February 2009…Stephen E. Hruby, the Defendant, and his coconspirators, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey… The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Stephen E. Hruby, the Defendant, and his Co-Conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.
>
> For the purpose of forming and carrying out the charged combination and conspiracy and conspiracy, Stephen E. Hruby, the Defendant, and his Co-Conspirators…a. attended meetings and engaged in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; b. instructed other bidders under his supervision to attend meetings and engage in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey; c. agreed during those meeting and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding; d. submitted bids in accordance with the agreements reached and e. purchased tax liens pursuant to those agreements at collusive and non-competitive interest rates.

82.     Vinaya K. Jessani, also an officer of Sass, has also pled guilty as part of the DOJ Investigation.

83.     Mr. Jessani was a senior vice president who supervised the purchasing of municipal tax liens at auctions in New Jersey.  In this capacity, Mr. Jessani oversaw, supervised and directed the purchase of tax sale certificates by Sass in New Jersey.

84.     The conspiracy charge to which Mr. Jessani pled guilty was based on the fact that in his job at Sass he "instructed and encouraged certain of [Sass's] bidders under his supervision, directly or indirectly, to attempt to allocate and to allocate liens and rig bids with other co-conspirators, was aware certain bidders did so, and approved such conduct."  "Pursuant to his role as a bidder for [Sass], at certain auctions for the sale of municipal tax liens, [he] agreed to allocate liens and rig bids with other co-conspirators."  Without such participation, the tax sale certificates detailed herein would not have been sold at an interest rate of 18%.

85.     On May 12, 2014, Mr. Jessani pled guilty to violating the Sherman Act for his role in the conspiracy.   See United States of America v. Vinaya K. Jessani, 14-CR-264 (D.N.J.)(D.M.C.).  The information accompanying his guilty plea states:

> Beginning at least as early as 1994 and continuing until as late as February 2009…VINAYA K. JESSANI and his co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition for the purchase of municipal tax liens sold at certain auctions within the District of New Jersey by allocating and submitting collusive and non-competitive bids for the purchase of said tax liens.  The combination and conspiracy engaged in by JESSANI and his co-conspirators was in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).
>
> The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among VINAYA K. JESSANI and his Co-Conspirators, the substantial terms of which were to rig bids for and allocate, and to rig bids for the

21

purchase of, municipal tax liens at certain auctions within the District of New Jersey.

For the purpose of forming and carrying out the charged combination and conspiracy and conspiracy, VINAYA K. JESSANI and his co-conspirators did those things that they combined and conspired to do, including…(a) prior to the commencement of certain auctions for the sale of municipal tax liens, discussing and agreeing not to compete for the purchase of certain municipal liens; (b) allocating the purchase of certain municipal tax liens among the co-conspirators, including, from time to time, by flipping a coin, drawing numbers out of a hat, drawing cards or drawing straws; (c) refraining from bidding on certain municipal tax liens pursuant to agreements reached among the co-conspirators so as to permit the designated winning bidder to purchase certain municipal tax liens at collusive and non-competitive interest rates; and (d) bidding on and purchasing municipal tax liens in accordance with those agreements at collusive and non-competitive interest rates.

86.    Upon information and belief, M.D. Sass Investor Services, Inc., M.D. Sass Tax Lien Management, LLC, Sass and other affiliated entities are about to be indicted.

87.    The Class Action Suit alleges that certain Sass employees, including Vinaya J. Jessani and Stephen Hruby, each of who was also named a defendant, as well as John de Guzman, Anthony Potenza, David Hasson, and Richard Hruby (Stephen Hruby's brother), each personally attended public tax sale certificate auctions in New Jersey and colluded with other bidders at these auctions.  In addition, the Class Action Suit alleges that Jessani was terminated by Sass for cause in connection with his participation in the activities alleged in the Class Action Suit.

88.    The Sass Class Defendants settled the Class Action Suit, where the Sass Class Defendants, *inter alia*, agreed to pay the sum of $3,400,000 and allowed a 15% discount to property owners, whose tax sale certificate interest rate is more than 0%, on their respective redemption amount.

89.    In this action, all of the tax sale certificates were purchased by Sass at an interest rate of 18% as no bidding for the subject tax certificates took place, while the bidding on some other certificates at most of the same auctions resulted in a much lower interest rate or in some instances the payment by the bidder of a premium.

90.    In addition, while Sass was purchasing tax sale certificates on the Debtors' properties at an interest rate of 18% at the Milltown auctions, some of the other defendants in the Class Action Suit and persons/entities which pled guilty in the DOJ Investigation were also purchasing tax sale certificates on properties not owned by the Debtors at an interest rate of 18%.

91.    Further, the individuals on behalf of Sass that attended the respective Milltown auctions were the same individuals identified in the Class Action Suit as having been participants in the bid rigging alleged in the Class Action Suit.

92.    In many instances, subsequent to Sass purchasing the tax sale certificates relating to the Debtors, Sass would then assign the tax sale certificates to its affiliate Cherry Tree.

93.    The tax certificates against Debtors' properties held by Defendants were acquired through or arose from auctions at which Defendants and other purchasers of tax sale certificates conspired to rig the bidding process so that there would be no competitive bidding and the tax sale certificates could be purchased at the maximum 18% rate of interest.

94.    Defendants' involvement in the illegal bid rigging scheme with regard to the sale at public auction of tax sale certificates throughout New Jersey, including, but not limited to, the auctions conducted at Milltown at which Defendants purchased the tax sale certificates relating to the Debtors' properties, constituted a pattern of illegal and criminal acts.

**Illegal Use of Mails**

23

95.    In furtherance of the illegal bid rigging scheme devised by Defendants and their co-conspirators intended to defraud and deprive Debtors and others of their rights and protections afforded by the sale of tax sale certificates through a competitive bidding process at public auction as provided in the Tax Sale Law,  Defendants used the United States mails on several occasions as to each tax sale certificate relating to Debtors' properties acquired by Defendants as a result of the bid rigging scheme.

96.    The use of the United States mails in executing said the illegal bid rigging scheme included, not was not limited to, the written notices and demands advising the Debtors of Defendants acquisition of the tax sale certificates, setting forth the amount in order to redeem and warning of foreclosure; written notices to Debtors from the Milltown tax collector's office advising of the sale of the certificates; communications between the Defendants and the Milltown tax collector with respect to the tax sale certificates and such matters as costs and fees sought by Defendants and their redemption; the mailing of pleadings, motions, affidavits and certifications from Defendants' employees, notices and other documents to the Superior Court of New Jersey and to Debtors in connection with the foreclosure of the tax sale certificates relating to Debtors' properties acquired by Defendants as a result of the bid rigging scheme.

97.    Defendants' use of the United States mails in executing the illegal bid rigging scheme constituted a pattern of acts constituting the federal criminal offense of mail fraud.

**Improper Purchase of Subsequent Tax Certificates to Assess Additional Redemption Penalties**

98.    Pursuant to the Tax Sale Law, the holder of a tax sale certificate has the right to pay subsequent taxes on the subject property.  See N.J.S.A. § 54:5-60.

99.    The payment of the subsequent taxes would result in an accrual of interest on the subsequent taxes at the rate or rates chargeable by the municipality, which can be no more than 8% per annum on the first $1,500 and 18% per annum on the balance.  See N.J.S.A. § 54:5-60.

100.    Unlike the purchase of a new tax sale certificate, the payment of subsequent taxes does not allow the assessment of a redemption penalty on the subsequent payments, nor does it result in interest at the rule of 8% on the first $1,500 and 18% on the balance.  See N.J.S.A. § 54:5-61.

101.    In order to be able to assess a redemption penalty with respect to certain of the above referenced tax sale certificates, Defendants chose not to pay the subsequent taxes as they had a right to do, but rather to purchase a new tax sale certificate at a municipal auction at 18%, which they were able to do because of the bid rigging conspiracy in which Defendants participated.

102.    Defendants knew that in engaging in such practice they were charging or exacting on redemption charges in excess of what was permitted under the Tax Sale Law.

**Sass Improperly Charged 18% On The Entire Tax Amount Each Year**

103.    Interest that may be charged on real estate taxes is limited to not more than 8% interest on the first $1,500 and up to 18% on any amounts in excess of $1,500 for each year.  See N.J.S.A. § 54:4-67.

104.    Defendants, in years in which they did not acquire tax sale certificates, paid the municipality the taxes accruing on Debtors' properties for years subsequent to those years for which they held certificates.

105.     Upon information and belief, Sass knowingly charged 18% on the entire amount of the subsequent years' taxes even though they were only able to collect interest at 8% on the first $1,500 of taxes due.

106.     Defendants knew that in engaging in such practice they were charging or exacting on redemption charges in excess of what was permitted under the Tax Sale Law.

**Sass Improperly Compounded Each Years Interest**

107.     N.J.S.A. § 54:4-67 provides that the holder of tax sale certificate may only charge simple interest on the outstanding tax amount.

108.     Upon information and belief, Sass knowingly charged compound interest.

109.     Defendants knew that in engaging in such practice they were charging or exacting on redemption charges in excess of what was permitted under the Tax Sale Law.

**Sass Improperly Charged Interest on the Year End Penalty**

110.     N.J.S.A. § 54:4-67 does not provide for interest to be charged on the Year End Penalty.

111.     Upon information and belief, Sass knowingly charged interest on the year end penalty at a rate of 18%.

112.     Defendants knew that in engaging in such practice they were charging or exacting on redemption charges in excess of what was permitted under the Tax Sale Law.

**Sass Improperly Charged Interest on the Redemption Penalty**

113.     The New Jersey statutes do not provide for interest on the Redemption Penalty.

114.     In the proofs of claim filed by Sass, they are knowingly charging and exacting 18% interest on the entire amount of the proofs of claim, which includes the Redemption Penalty.

115.    Defendants knew that in engaging in such practice they were charging or exacting

on redemption charges in excess of what was permitted under the Tax Sale Law.

## COUNT ONE
## CLAIMS OF DEFENDANTS SHOULD BE DISALLOWED

116.    The Debtors hereby repeat and allege each and every allegation stated above as if

set forth at length herein.

117.    N.J.S.A. § 54:5-63.1 provides that any holder of a tax sale certificate who

knowingly charges in excess of the statutory amounts permitted under the Tax Sale Law "shall"

forfeit such tax sale certificate to the person who was charged such excessive or unlawful fee.

118.    If any holder of a tax sale certificate violates the provisions of N.J.S.A. § 54:5-

63.1, forfeiture of the tax sale certificate to the owner of the real property with respect to which

the tax sale certificate was issued, is mandatory.

119.    The Tax Sale Law authorizes interest at up to a maximum of 18% to be charged

on a tax sale certificate sold at auction through competitive bidding.

120.    Defendants knowingly, intentionally and illegally manipulated the bidding for the

tax certificates so that they could purchase the tax sale certificates at an 18% rate rather than

having to bid down that rate in a competitive auction, which could result in a 0% rate and the

payment of a premium in order to "win" the bid in contravention of the Tax Sale Law.

121.    Defendants knowingly, intentionally and illegally purchased the tax sale

certificates with respect to Debtors' properties through a bid rigging scheme in order to

circumvent the requirement of competitive bidding under the Tax Sale Law, which renders the

rate of 18% charged on those certificates purchased in circumvention of competitive bidding in

excess of what is permitted under the Tax Sale Law.

122.    Defendants knowingly and intentionally charged 18% interest on the first $1,500 of each year's delinquency instead of the statutory 8% interest rate.

123.    Defendants knowingly and intentionally manipulated the return they charged by not paying the subsequent year taxes so that they could purchase the subsequent tax sale certificate at auction and thereby charge the 6% redemption penalty on such amount.

124.    Defendants knowingly and intentionally compounded interest where the statute specifically limits interest to simple interest.

125.    Defendants knowingly and intentionally charged interest on each year's year end penalty where the statute does not provide for same.

126.    Defendants knowingly and intentionally charged in their proofs of claim interest on the Redemption Penalty where the statute does not provide for same.

127.    Defendants knowingly and intentionally included the excessive amounts in their respective proofs of claim.

128.    Defendants knowingly and intentionally demanded interest in their proofs of claim at 18% per annum on the entire amount claimed to be due, thereby compounding interest.

129.    Defendants knew that in engaging in such practices and knowingly and intentionally imposing such charges they were charging or exacting on redemption charges in excess of what was permitted under the Tax Sale Law.

130.    Accordingly, pursuant to N.J.S.A. § 54:5-63.1, the Debtors request the entry of a judgment disallowing the claims held by Defendants against each of the Debtors and declaring that all of Defendants right, title and interest in and to the tax sales certificates held by the Defendants on the Debtors' properties are forfeited to and shall belong to and be the property of the respective Debtor.

**COUNT TWO**
**REDUCTION OF DEFENDANTS' CLAIMS**

131.    The Debtors hereby repeat and allege each and every allegation stated above as if set forth at length herein.

132.    By the within Complaint, the Debtors object to the Proofs of Claim filed by the Defendants pursuant to 11 U.S.C. § 502.

133.    Each of the Proofs of Claim is excessive by the utilizing the bid rigged 18% interest on purchase amount set forth in the tax sale certificate.

134.    Each of the Proofs of Claim is excessive based on the inclusion of 18% interest on the accrued interest.

135.    Each of the Proofs of Claim is excessive based on the inclusion of 18% interest on the year end penalty.

136.    Each of the Proofs of Claim is excessive by improperly compounding interest.

137.    Each of the Proofs of Claim is excessive based on the inclusion of 18% interest on the first $1,500 of delinquency.

138.    Each of the Proofs of Claim is excessive to the extent the Defendant purchased the subsequent tax sale certificate as opposed to paying the subsequent taxes, which resulted in a 6 % year end penalty on such sums, and did not allow for the 8% interest rate on the first $1,500 of taxes.

139.    Accordingly, pursuant to 11 U.S.C. § 502, the Debtors are entitled to reductions of each of the Defendants' Proofs of Claim.

**COUNT THREE**
**RICO**

29

140.    The Debtors hereby repeat and allege each and every allegation stated above as if set forth at length herein.

141.    Defendants directly or indirectly engaged and participated in a conspiracy and enterprise involving themselves and unrelated persons and others, like Defendants, engaged in the business of acquiring and investing in tax sale certificates, to rig the bidding of tax sale certificates at public auctions in New Jersey and in other States, affecting both intra- and interstate trade and commerce, on numerous occasions and over a period of time, in criminal violation of the laws of New Jersey and those other States, and federal statutes.

142.    Defendants, in executing the illegal bid ridding scheme, engaged in numerous acts of mail fraud in violation of federal law and evidences a pattern of racketeering by Defendants.

143.    Each purchase of the tax sale certificates and use of the United States mails with regard to Debtors' properties is a racketeering act and constitutes and evidences a pattern of racketeering by Defendants.

144.    Debtors were injured in their businesses and Defendants' unlawful conduct was the proximate cause of damages to Debtors.

145.    Defendants' conduct constitute violations under both state and federal RICO statutes, *N.J.S.A.* 2C:41–1 to –6.2.; 18 *U.S.C.A.* §1961 to §1968.

146.    Debtors are entitled to triple damages and legal fees, as well as such other relief afforded under both state and federal RICO statutes.

## COUNT FOUR
## ANTI-TRUST

147.    The Debtors hereby repeat and allege each and every allegation stated above as if set forth at length herein.

148.    Defendants contracted, combined, or conspired with others, like Defendants, engaged in the business of acquiring and investing in tax sale certificates, to restrain both intra- and interstate trade and commerce and to lessen, undermine and prevent competition, by rigging the bidding of tax sale certificates at public auctions in New Jersey and in other States, including those auctions at which the tax sale certificates relating to Debtors' properties were sold to Defendants, on numerous occasions and over a period of time, in contravention to law and with the unlawful purpose of preventing competition so that Defendants and their conspirators could acquire tax sale certificates at auction at the maximum interest rate of 18%.

149.    Debtors were injured and incurred damages in their businesses as proximate result of Defendants' unlawful conduct.

150.    Defendants' conduct constitute violations under both state and federal antitrust statutes, *N.J.S.A.* 56:9-1, *et seq.*, 15 *U.S.C.A.* § 1.

151.    Debtors are entitled to triple damages and legal fees, as well as such other relief afforded under both state and federal antitrust statutes.

**COUNT FIVE**
**CONSUMER FRAUD ACT**

152.    The Debtors hereby repeat and allege each and every allegation stated above as if set forth at length herein.

153.    Defendants engaged in unlawful, deceptive, unconscionable and fraudulent acts, including, but not limited to the acquisition of the tax sale certificates with regard to Debtors' properties at a interest rate established without competitive bidding as required by law, and the demand, imposition, charging and exaction of excessive fees and penalties in contravention of the law with respect to the tax sale certificates with regard to Debtors' properties.

154.    Defendants knowingly and intentionally concealed, suppressed or omitted its participation in the unlawful bid rigging scheme with respect to the purchase of tax sale certificates, and its purchase of the tax sale certificates with regard to Debtors' properties without competitive bidding as required by law, and at an 18% interest rate, rather than a rate determined by competitive bidding.

155.    Defendants knowingly and intentionally sought to charge Debtors interest on the tax sale certificates with regard to Debtors' properties at an excessive interest rate rather than a rate determined by competitive bidding, which rate Defendants avoided through their clandestine and illegal bid ridding conspiracy with other tax sale certificate investors.

156.    Defendants knowingly and intentionally engaged in this conduct with the intention that others, including, but not limited to Debtors, would rely on the appearance that the tax sale certificates, including on the tax sale certificates with regard to Debtors' properties, were lawfully purchased at an 18% interest rate at a fair and proper public auction with competitive bidding, in determining and paying the amount to redeem the certificates at the 18% stated rate.

157.    Defendants knowingly and intentionally sought to charge Debtors excessive interest, fees and penalties in contravention of the law with respect to the tax sale certificates with regard to Debtors' properties, including, but not limited to interest on the entire claim in their proofs of claim at 18% per annum, effectively illegally compounding interest.

158.    Defendants knowingly and intentionally communicated false, misleading and deceptive information, including but not limited to, the purported propriety of the purchase of the certificates; the purported propriety of demanding an interest rate which Defendants concealed was obtained without competitive bidding, and the charging of sums in excess of what was permitted at law,  to Debtors and others with respect to the tax sale certificates, including tax sale

32

certificates with regard to Debtors' properties, purchased by Defendants through their clandestine and illegal bid rigging conspiracy with other tax sale certificate investors, in contravention of the law.

159.    Debtors were injured and incurred an ascertainable loss as a proximate result of Defendants' unlawful conduct.

160.    Defendants' conduct constitutes violations of New Jersey's Consumer Fraud Act, *N.J.S.A.* 56:8-1, *et seq.*

161.    Debtors are entitled to triple damages and legal fees, as well as such other relief afforded under the Consumer Fraud Act.

**WHEREFORE**, the Debtors demand judgment against Defendants,

(1) disallowing all claims held by Defendants against each of the Debtors;

(2) declaring that all of Defendants' right, title and interest in and to the tax sales certificates held by the Defendants on the Debtors' properties are forfeited to and shall belong to and be the property of the respective Debtor;

(3) reducing the claims so as not to include the excessive or illegal charges;

(4) awarding Debtors damages;

(5) awarding Debtors triple damages as authorized by statute;

(6) awarding the Debtors costs and reasonable attorneys' fees to the extent permitted; and

(7) granting to the Debtors such other and further relief as the Court deems equitable and proper.

Dated: February 2, 2015

> **BERGER & BORNSTEIN, LLC**
> Co-Counsel for the
>  Plaintiffs/Debtors/Debtors-in-Possession
>
>
> **NORRIS McLAUGHLIN & MARCUS, P. A.**
> Co-Counsel for the
>  Plaintiffs/Debtors/Debtors-in-Possession
>
> By: */s/ Morris S. Bauer*_____
>      Morris S. Bauer

**<u>VERIFICATION</u>**

Lawrence S. Berger, of full age, hereby certifies and says:

1.      I am the president of Manager of S B Building Associates Limited Partnership, the Manger of SB Milltown Industrial Realty Holdings, LLC and the President of Also Corporation, the debtors and debtors-in-possession, and am fully familiar with the facts and circumstances set forth herein.

2.      I have reviewed the factual information contained herein, and the same is true and accurate to the best of my knowledge and belief.

I hereby certify that the foregoing statements made by me are true.   If any of the foregoing statements made by me are willfully false, I am subject to punishment.


_____/s/ Lawrence S. Berger_____
                    LAWRENCE S. BERGER

Dated: February 2, 2015